Jeffrey R. Thomas, Cal Bar. No. 179327
Email: jthomas@thomaslawllc.com
Attorney for Defendant Gregg E. Jaclin
Thomas Law LLC
50 S. Steele St., Ste. 250
Denver, Colorado 80209
Telephone: 720.330.2805
Fax: 720.330.2806

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>IMRAN HUSAIN and GREGG EVAN JACLIN,<br><br>Defendants. | Case No. 2:16-cv-03250-ODW (Ex)<br><br>**DEFENDANT GREGG E. JACLIN'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:  February 27, 2017<br>Time:  1:30 p.m.<br>Ctrm:  5D<br>Hon. Otis D. Wright, II<br><br>First Amended Complaint Served: November 22, 2016 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 27, 2017 at 1:30 p.m. or as soon thereafter as counsel may be heard in the above-captioned Court, located at the First Street Courthouse, 350 W 1st Street, Los Angeles, CA 90012, Defendant Gregg E. Jaclin, through his counsel, will and hereby does move the Court pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure for an order (1) dismissing Plaintiff Securities and Exchange Commission's ("SEC") First Amended Complaint ("FAC") (Dkt No. 33) with respect to Mr. Jaclin; and (2) to the extent any Claim is not dismissed, in whole or part, dismissing the SEC's

claims for penalties and disgorgement to the extent those claims rely on conduct occurring before March 1, 2011.

This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Request for Judicial Notice filed concurrently herewith, the pleadings and papers of record, and such other evidence and argument as may be presented to the Court at or before the hearing of this Motion.

**This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on December 16th and 19th, 2016.**

Dated: December 23, 2016                    Respectfully Submitted,

                                            /s/Jeffrey R. Thomas
                                            Jeffrey R. Thomas
                                            THOMAS LAW LLC
                                            Attorney for Defendant Gregg E. Jaclin

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................7

I.   INTRODUCTION ........................................................................................7

II.  LEGAL STANDARD ..................................................................................8

   A.  F.R.C.P. 12(b)(6) Motion to Dismiss ...................................................8

   B.  F.R.C.P. 9(b) Particularity Requirement ...........................................9

III.  ARGUMENT.............................................................................................9

   A.  The SEC Has Failed to Correct the Defects in Its Original Complaint. ..........9

   B.  The Sixth and Eighth Claims Should Be Dismissed Because the SEC Fails to Adequately Plead the "In Connection With" Requirement. ................................10

   C.  The Third, Fourth, and Fifth Claims Should Be Dismissed Because the SEC Fails to Adequately Plead the "In the Offer or Sale" Requirement......................12

   D.  The Fourth, Fifth, and Eighth Claims Should Be Dismissed, in Whole or Part, Because the SEC Fails to Adequately Plead Materiality. ............................13

   E.  The Sixth Claim Should Be Dismissed Because the SEC Impermissibly Alleges a "Scheme" as a "Back Door" into Primary Liability............................14

   F.  The Third Claim Should Be Dismissed to The Extent It Impermissibly Alleges "Scheme" Liability. .................................................................17

   G.  The Fifth and Eighth Claims Should Be Dismissed to the Extent They Impermissibly Allege Secondary "Scheme" Liability...........................................17

   H.  The Fourth Claim Should Be Dismissed Because It Is Barred Under Janus. 18

   I.   The Ninth Claim Should Be Dismissed Because the SEC Fails to Adequately Plead Materiality.................................................................19

   J.  The First Claim Should Be Dismissed Because Registration Statements Were in Effect and Mr. Jaclin Cannot Be Liable as a "Participant." ............................20

   K.  The Second Claim Should Be Dismissed Because the SEC Does Not Plead Facts Sufficient to Show "Substantial Assistance." ............................................22

L.   Any Claims for Penalties and Disgorgement Should Be Dismissed as Time Barred to the Extent They Rely on Conduct Occurring Before March 1, 2011...23

IV.   CONCLUSION ................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 7, 8, 13

*Basic, Inc. v. Levinson*, 485 U.S. 224, 231 (1988) ...............................................12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... 7, 13

*Gabelli v. SEC*, 133 S. Ct. 1216 (2013) ...............................................................22

*In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1185 (C.D. Cal. 2008) ...................................................................................................................12

*Janus Capital Group, Inc. v. First Derivative Traders,* 564 U.S. 135 (2011) . 13, 17

*S.E.C. v. Richie*, No. EDCV 06-63-VAP SGLX, 2008 WL 2938678, at *5 (C.D. Cal. May 9, 2008) ...................................................................................................8

*SEC v. Apuzzo*, 689 F.3d 204 (2d Cir. 2012) ................................................. 16, 21

*SEC v. Brown*, 740 F. Supp. 2d 148 (D.D.C. 2010) .............................................15

*SEC v. Falstaff Brewing Corp.*, 629 F.2d 62, 72 (D.C. Cir. 1980) ..........................19

*SEC v. Goldstone*, 952 F. Supp. 2d 1060 (D.N.M. 2013) ......................................15

*SEC v. Graham*, 823 F.3d 1357 (11th Cir. 2016) ..............................................22

*SEC v. Kelly*, 817 F. Supp. 2d 340 (S.D.N.Y. 2011) ................................... 14, 16, 18

*SEC v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342 (D.N.J. 2009)............................13

*SEC v. Monarch Funding Corp.*, 1996 WL 348209, at *7 n.8 (S.D.N.Y. June 24, 1996) ....................................................................................................................20

*SEC v. Murphy*, 626 F.2d 633 (9th Cir. 1980)......................................................20

*SEC v. Perry*, No. CV-11-1309 R, 2012 WL 1959566 (C.D. Cal. May 31, 2012) .17

*SEC v. Rind*, 991 F.2d 1486 (9th Cir. 1993) .........................................................23

*SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1165-67 (D.C. Cir. 1978) .....................18

*SEC v. St. Anselm Exploration Co.*, 936 F. Supp. 2d 1281 (D. Colo. 2013)...........14

SEC v. Zandford, 535 U.S. 813 (2002) ............................................................ 9, 11

*SEC v. Zandford*, 535 U.S. 813, 822 (2002).........................................................9

*Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) .....................8

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039 (2011) ............................................................................................................................14

**Statutes**

15 U.S.C. § 77b(a)(3)..........................................................................................12

15 U.S.C. § 77d(a)(2) ...........................................................................19

15 U.S.C. § 77e .....................................................................................19

15 U.S.C. § 77q(a) ......................................................................... 12, 16

15 U.S.C. § 78m ....................................................................................18

15 U.S.C. § 78o(d) ................................................................................18

28 U.S.C. § 2462 ...................................................................................22

**Other Authorities**

*Coincide*, MERRIAM-WEBSTER'S ONLINE DICTIONARY ............................................9

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................... 7, 13

Fed. R. Civ. P. 9(b) ........................................................................... 8, 13

**Regulations**

17 C.F.R. § 240.10b-5 ......................................................................... 9, 12

17 C.F.R. §§ 240.15d-1 ..........................................................................18

17 C.F.R. 240.12b-20 .............................................................................18

17 C.F.R. 240.15d-13 .............................................................................18

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

The SEC alleges that, between 2006 and 2013, Defendant Imran Husain, along with Mr. Jaclin – a corporate attorney – operated a so-called fraudulent "shell factory enterprise" in which they "create[d] public 'shell' companies, which had virtually no assets or operations and had no legitimate business purpose, and [sold] them to buyers who sought to trade the shell companies' stock publicly." FAC ¶ 4.  The fundamental facts per the FAC are as follows: Husain and Mr. Jaclin formed nine companies (the "Companies"), issued shares in the Companies to fake shareholders who were in fact Husain (the SEC refers to these shareholders as the "Straw Shareholders"), and took the Companies public by having them file Form S-1 registration statements registering the Straw Shareholders' shares for sale.  FAC ¶¶ 40-64.  Those registration statements and other SEC filings failed to disclose Husain as a control person or promoter of the Companies and contained other false or misleading statements.  FAC ¶¶ 65-95, 112-123.  Husain then sold the Companies, over which he had complete control at the time of sale, for a total of about $2.25 million in proceeds, while Mr. Jaclin's law firm earned less than $225,000 in fees for legal services provided to the Companies by Mr. Jaclin and other lawyers at his firm.  FAC ¶¶ 12, 96-111.  The SEC refers to the purchasers of the companies as the "Shell Company Purchasers."  The Shell Company Purchasers effected reverse mergers between the Companies and other entities, and the Companies disclosed information about the new post-merger Company in SEC filings.  FAC ¶¶ 108-111, 124-125.

The SEC's own allegations make clear that no investor or potential investor was defrauded or deceived in any way through any of the conduct alleged in the FAC.  In particular, the SEC *does not allege* that Husain or anyone else sold *any* shares in the public market before the Companies were sold to the Shell Company Purchasers.  And the Shell Company Purchasers certainly were not defrauded, as

1   they got exactly what they wanted – i.e., a shell company. Finally, any stock sales

2   occurring after the Companies were sold to the Shell Company Purchasers took

3   place only after (1) the Companies had merged with other companies and had new

4   businesses, shareholders, and management, (2) these changes were disclosed in

5   SEC filings, and (3) Husain no longer had any connection to the Companies.

6       As discussed below, none of the eight Claims asserted against Mr. Jaclin

7   states a claim on which relief can be granted under the *Twombly/Iqbal* pleading

8   standard. Moreover, five of the eight Claims asserted against Mr. Jaclin are fraud-

9   based Claims (Claims Three, Four, Five, Six, and Eight) and must be pled with

10  particularity under F.R.C.P. 9(b). While those Claims fail to meet the less

11  demanding *Twombly/Iqbal* standard, they are even more glaringly deficient under

12  the heightened Rule 9(b) standard. For these reasons, this Court should dismiss the

13  SEC's FAC with respect to Mr. Jaclin. To the extent any Claim is not dismissed,

14  in whole or part, the Court should dismiss as time barred the SEC's request for

15  penalties and disgorgement to the extent those requests rely on conduct occurring

16  before March 1, 2011.

17                      **II.    LEGAL STANDARD**

18  **A.    F.R.C.P. 12(b)(6) Motion to Dismiss**

19      A complaint must plead "enough facts to state a claim to relief that is

20  plausible on its face" to survive dismissal under F.R.C.P. 12(b)(6). *Bell Atl. Corp.*

21  *v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the

22  plaintiff "pleads factual content that allows the court to draw the reasonable

23  inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

24  *Iqbal*, 556 U.S. 662, 678 (2009). Facts that are merely consistent with unlawful

25  conduct are not sufficient, and the complaint's allegations must permit the court to

26  infer more than the mere possibility of misconduct. *Id.* Moreover, the complaint's

27  factual allegations must be sufficient to "raise a right to relief above the speculative

28  level." *Twombly*, 550 U.S. at 555. "[A] plaintiff's obligation to provide the

8

1   'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

2   and a formulaic recitation of the elements of a cause of action will not do." *Id.*

3   (*quoting Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original).

4   Finally, while a court must accept all allegations in a complaint as true, that is not

5   the case with legal conclusions. *Iqbal*, 556 U.S. at 678.  That is, "[t]hreadbare

6   recitals of the elements of a cause of action, supported by mere conclusory

7   statements, do not suffice." *Id.*

8   **B.   F.R.C.P. 9(b) Particularity Requirement**

9       Fraud-based claims must be pleaded with particularity.  *See* Fed. R. Civ. P.

10  9(b).  To conform with Rule 9(b), a pleading should identify the circumstances

11  constituting fraud so that the defendant can prepare an adequate answer from the

12  allegations.  *See S.E.C. v. Richie*, No. EDCV 06-63-VAP SGLX, 2008 WL

13  2938678, at *5 (C.D. Cal. May 9, 2008) (relying on *Wool v. Tandem Computers*

14  *Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987)).  This requires the plaintiff to provide the

15  who, what, when, where, why of the fraud alleged.  *Vess v. Ciba–Geigy Corp.*

16  *USA,* 317 F.3d 1097, 1106 (9th Cir. 2003).

17                    **III.   ARGUMENT**

18  **A.   The SEC Has Failed to Correct the Defects in Its Original Complaint.**

19      In its October 24, 2016 Order Granting Defendant Imran Husain's Motion to

20  Dismiss and Dismissing His Motion to Strike (Dkt No. 31), this Court found that

21  the SEC in is original Complaint failed to plead a particularized factual basis for its

22  fraud claims, as required by Rule 9(b).  Specifically, this Court found that "[n]one

23  of the claims include a specific theory of violation or highlight a specific subset of

24  facts," and that "with the exception of [a claim asserted only against Husain], the

25  claims do not clearly differentiate between the activities of Defendant and Co-

26  defendant."

27      The FAC provides no greater clarification than the original Complaint as to

28  what specific conduct the SEC intends to assert as a violation such that Mr. Jaclin

can prepare an adequate answer.  Instead of clarifying its allegations, the SEC has increased the number of paragraphs in the factual allegations of the pleading from 128 to 171 and the total number of pages in the pleading from 45 to 59, thereby increasing the size of the "puzzle" that Mr. Jaclin must sort out.  Moreover, all of the fraud-based Claims asserted against Mr. Jaclin are asserted against Husain as well, and those Claims continue to fail to differentiate between the activities of Mr. Jaclin and Husain.  Finally, in an apparent attempt to highlight a specific subset of facts applicable to each Claim, the SEC has in most cases simply added one additional paragraph to the Claim.  And that additional paragraph does nothing more than provide a vague summary of the prolix factual allegations.  Under these circumstances, the fraud-based Claims asserted against Mr. Jaclin fail to satisfy Rule 9(b)'s particularity requirement and should be dismissed without leave to amend.

**B.    The Sixth and Eighth Claims Should Be Dismissed Because the SEC Fails to Adequately Plead the "In Connection With" Requirement.**

To establish liability under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, the SEC must show that the alleged fraudulent conduct was "in connection with" the purchase or sale of a security.  *See* 17 C.F.R. § 240.10b-5.  To satisfy the "in connection with" requirement, the Commission must show that the fraudulent conduct and the purchase or sale of securities "coincide."  *See SEC v. Zandford*, 535 U.S. 813, 822 (2002).  "Coincide" means "to happen at the same time as something else." *Coincide*, MERRIAM-WEBSTER'S ONLINE DICTIONARY.

Here, the SEC does not allege that *any* purchases or sales of stock of *any* of the Companies occurred before the Companies were sold to the Shell Company Purchasers.  Accordingly, the "in connection with" requirement can be satisfied only by (1) sales *to* the Shell Company Purchasers or (2) sales in the public

markets *after* the Companies were sold to the Shell Company Purchasers, had merged with other entities, and had disclosed these changes in public filings.

Two of the Companies – Comp Services and Counseling International – were never sold to Shell Company Purchasers. *See* FAC App'x 3. Indeed, the SEC does not allege that *any* purchases or sales of stock of these two Companies occurred after the initial registration statements were filed. The SEC's own allegations therefore establish that the "in connection with" requirement is not met with respect to these Companies.

For the remaining seven Companies, the SEC cannot plausibly claim that any allegedly fraudulent statements in pre-merger filings were "in connection with" the sales to the Shell Company Purchasers, as those purchasers knew the Companies to be shells and therefore were not deceived in any way. *See* FAC ¶¶ 96-111.

Nor can the SEC plausibly claim that any allegedly fraudulent statements were "in connection with" any post-merger stock sales, as each of the six Companies for which it is alleged such sales occurred filed a Form 8-K or other filing immediately after its reverse merger and *before* the first public offer and sale following the merger:

| Company | Merger Date | 8-K (or Other Filing) Filing Date | Date of First Public Offer and Sale Following Merger |
|---|---|---|---|
| New Image | 12/7/2009 | *12/11/2009* | 12/14/2009 |
| PR Complete | 12/4/2009 | *12/15/2009* | 1/21/2010 |
| Ciglarette | 3/1/2011 | *3/7/2011* | 3/14/2011 |
| Rapid Holdings | 5/11/2011 | *5/11/2011* | 6/7/2011 |
| Health Directory | 7/20/2012 | *7/24/2012 (8-K)* *8/13/2012 (10-Q)* *8/13/2012 (DEF14C)* | 10/15/2012 |
| Movie Trailer | 9/11/2012 | *9/28/2012 (8-K)* *10/01/2012 (8-K)* *10/22/2012 (DEF14C)* | 10/23/2012 |

*See* FAC App'x 4; Jaclin Request for Judicial Notice, filed concurrently herewith, Ex's A-J.[1]

Those filings contained comprehensive information concerning the post-merger Companies, including information concerning the Companies' new businesses, new ownership, and new officers and directors.  The SEC does not allege that Husain had any involvement whatsoever with the post-merger Companies, nor does it allege that the Forms 8-K and other filings that the Companies filed immediately after the mergers contained any misrepresentations.  Only *after* those Forms 8-K and other filings – which, again, are not alleged to have contained any misstatements or omissions – were filed and made available publicly on the SEC's website did *any* public trading occur in the Companies' stocks.  Under these circumstances, to allege, as the SEC does, that any misstatements in *pre*-merger SEC filings that were filed months (and even years) beforehand were "in connection with" any *post*-merger public stock sales simply defies common sense.

Based on the foregoing, the SEC's own allegations affirmatively establish that any fraudulent statements or omissions in any pre-merger filings relating to any of the Companies were not "in connection with" the purchase or sale of a security.

**C.    The Third, Fourth, and Fifth Claims Should Be Dismissed Because the SEC Fails to Adequately Plead the "In the Offer or Sale" Requirement.**

To establish liability under Section 17(a) of the Securities Act of 1933 ("Securities Act"), the SEC must show that a fraudulent statement or omission was made "in the offer or sale" of a security.  *See* 15 U.S.C. § 77q(a).  Securities Act Section 2(a)(3) defines "offer" as every attempt or offer to dispose of, or

---

[1] Another Company – Resume in Minutes – was sold to a Shell Company Purchaser, but the SEC does not allege that there were any sales in the public markets thereafter.  *See* FAC App'x 4.

1    solicitation of an offer to buy, a security or interest in a security, for value."  15

2    U.S.C. § 77b(a)(3).  Just as the SEC does not allege that any stock *purchases or*

3    *sales* took place before the Companies were sold to the Shell Company Purchasers,

4    the SEC likewise does not allege that any stock *offers* took place before the

5    Companies were sold to the Shell Company Purchasers.  Thus, as with the "in

6    connection with" requirement of Exchange Act Rule 10b-5, the "in the offer or

7    sale" requirement of Securities Act Section 17(a) can be satisfied only by (1) offers

8    *to* the Shell Company Purchasers or (2) offers in the public markets *after* the

9    Companies had been sold to the Shell Company Purchasers and merged with other

10   entities, and these changes had been disclosed in SEC filings.  For the reasons

11   discussed above, the SEC's claim that any such offers satisfy the "in the offer or

12   sale" requirement is simply implausible.

13   **D.    The Fourth, Fifth, and Eighth Claims Should Be Dismissed, in Whole or**

14          **Part, Because the SEC Fails to Adequately Plead Materiality.**

15          For liability to attach under Exchange Act Rule 10b-5(b) or Securities Act

16   Section 17(a)(2), a misrepresentation or omission of fact must be material.  *See* 17

17   C.F.R. § 240.10b-5; 15 U.S.C. § 77q(a).  A fact is material if there is a substantial

18   likelihood that a reasonable investor would consider it important in making an

19   investment decision.  *See Basic, Inc. v. Levinson*, 485 U.S. 224, 231 (1988).  As a

20   "circumstance constituting fraud," materiality is subject to Rule 9(b) and must be

21   pled with particularity.  *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp.

22   2d 1132, 1185 (C.D. Cal. 2008).

23          The SEC states in conclusory fashion that the allegedly fraudulent

24   statements identified in the FAC were material.  *See, e.g.,* FAC ¶¶ 192, 196, 209,

25   211, 216.  But the SEC alleges *no factual basis whatsoever* to support those

26   conclusory statements.  In fact, the FAC is devoid of any factual allegations

27   whatsoever concerning stock price or volume movement, investor conduct or

28   testimony, or anything else that would support the allegation that the allegedly

false statements were material.  Indeed, the SEC cannot plead any such facts because they don't exist.  These are precisely the type of "thread-bare recitals" and "conclusory statements" that the *Twombly* and *Iqbal* Courts held are insufficient to survive dismissal under Rule 12(b)(6).  And for the fraud-based claims, they certainly do not meet the heightened pleading requirement of Rule 9(b).  For that reason, the Fourth Claim should be dismissed and the Fifth and Eighth Claims should be dismissed in part.

**E.     The Sixth Claim Should Be Dismissed Because the SEC Impermissibly Alleges a "Scheme" as a "Back Door" into Primary Liability.**

Exchange Act Rule 10b-5 states that "[i]t shall be unlawful for any person [in connection with the purchase or sale of any security]

(a)     To employ any device, scheme, or artifice to defraud,

(b)     To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c)     To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."

17 C.F.R. § 240.10b-5.

The SEC does not allege that Mr. Jaclin is primarily liable under subsection (b) of Rule 10b-5, apparently acknowledging that *Janus Capital Group, Inc. v. First Derivative Traders,* 564 U.S. 135 (2011) and its progeny preclude such liability.  Instead, the SEC asserts a claim for "scheme" liability under subsections (a) and (c) of Rule 10b-5.  To prevail on a claim for scheme liability under Rule 10b-5(a) or (c), the SEC must prove that Mr. Jaclin: (1) committed a deceptive or manipulative act, (2) in furtherance of an alleged scheme to defraud, (3) with scienter.  *SEC v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 350 (D.N.J. 2009).

14

In *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039 (2011), the Ninth Circuit expressly adopted the rule that "[a] defendant may only be liable as part of a fraudulent scheme based upon misrepresentations and omissions under Rules 10b-5(a) or (c) when the scheme also encompasses conduct beyond those misrepresentations or omissions." *Id.* at 1057. In so doing, the Ninth Circuit emphasized "the importance of maintaining a distinction among the various Rule 10b-5 claims from one another [as] the lines dividing the different claims are … 'carefully maintained' and are 'well-established.'" *Id.* (*quoting Desai v. Deutsche Bank Securities Ltd.*, 573 F.3d 931, 941 (9ᵗʰ Cir. 2009)).

Similarly, in *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011), the Southern District of New York dismissed the SEC's scheme liability claim, stating that "[s]cheme liability under subsections (a) and (c) of Rule 10b-5 hinges on the performance of an inherently deceptive act *that is distinct from an alleged misstatement*" and explaining that "courts have routinely rejected the SEC's attempt to bypass the elements necessary to impose 'misstatement' liability under subsection (b) [of Rule 10b-5] by labeling the alleged misconduct a 'scheme' rather than a 'misstatement.'" *Id.* at 343-44 (emphasis added). The *Kelly* court admonished the SEC for using scheme liability as "a 'back door into liability for those who help others make a false statement or omission in violation of subsection (b) of Rule 10b-5.'" *Id.*

This back-door approach has been consistently rejected by other federal courts. *See, e.g., SEC v. St. Anselm Exploration Co.*, 936 F. Supp. 2d 1281, 1298-99 (D. Colo. 2013) ("liability does not arise simply by virtue of repackaging a fraudulent misrepresentation a 'scheme to defraud' … Rather scheme liability requires proof of participation in an illegitimate, sham, or inherently deceptive transaction where the defendant's conduct or role has the purpose and effect of creating a false appearance … Stated differently, scheme liability exists only where there is deceptive conduct going beyond misrepresentations"); *SEC v. Goldstone*,

952 F. Supp. 2d 1060, 1235-36 (D.N.M. 2013) ("[t]he fatal problem with the SEC's allegations of scheme liability is that, apart from the alleged misrepresentations and omissions … none of the conduct the SEC references in furtherance of the scheme is inherently deceptive"); *SEC v. Brown*, 740 F. Supp. 2d 148, 172 (D.D.C. 2010) ("to establish primary liability under Rule 10b-5(a) or (c), the alleged conduct must be more than a reiteration of the misrepresentations underlying the Rule 10b-5(b) misstatement claims").

Here, despite the SEC's attempt to characterize this case as a scheme case, it is plainly a misstatement case. The alleged factual basis for the SEC's Sixth Claim for scheme liability under Rule 10b-5(a) and (c) is as follows:

> "Husain and Jaclin each engaged in a scheme to defraud by creating and operating a shell factory through which sham companies with no business purpose and with materially misleading SEC filings were sold to purchasers, who intended to distribute the companies' shares publicly. Husain and Jaclin engaged in numerous deceptive acts to conceal the shell factory and to maintain the sham companies' false appearance to the public markets, regulators, market makers, and transfer agents, including by using puppet CEOs, sham private placements and shell company sales with Straw Shareholders, and fake email accounts, and by deleting emails and coaching a witness to lie under oath."

FAC ¶ 202.

The entirety of those allegations relate to one issue: the alleged failure to disclose Husain as a control person or promoter of the Companies. The question this Court must ask itself is this: *Would the "scheme" the SEC alleges have existed if the Companies had disclosed Husain as a control person and promoter?* The answer to that question is plainly "no." As the Ninth Circuit stated in *WPP*

*Luxembourg*, "fundamentally this is an omission claim," and this Court should reject the SEC's attempt to cast it as something else.

**F.     The Third Claim Should Be Dismissed to The Extent It Impermissibly Alleges "Scheme" Liability.**

Securities Act Section 17(a) states that "[i]t shall be unlawful for any person in the offer or sale of any securities …

(1)     to employ any device, scheme, or artifice to defraud, or

(2)     to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(3)     to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

15 U.S.C. § 77q(a).  "As with Rule 10b–5, subsections (1) and (3) of Section 17(a) apply to scheme liability and subsection (2) applies to misstatement liability." *Kelly*, 817 F. Supp. 2d at 345.  For the reasons discussed above, the SEC has impermissibly attempted to cast a misstatement case as a scheme case, and its claim for violations of Securities Act Section 17(a)(1) and (3) should therefore be dismissed.

**G.     The Fifth and Eighth Claims Should Be Dismissed to the Extent They Impermissibly Allege Secondary "Scheme" Liability.**

To establish aiding and abetting liability under the federal securities laws, "the SEC must prove: (1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party; (2) knowledge of this violation on the part of the aider and abettor; and (3) 'substantial assistance' by the aider and abettor in the achievement of the primary violation."  *SEC v. Apuzzo*, 689 F.3d 204, 211 (2d Cir. 2012).  As discussed above, this is a misstatement case under

Section 17(a)(2) and Rule 10b-5(b), not a scheme case under Section 17(a)(1) and (3) or Rule 10b-5(a) and (c).  It follows that the SEC cannot establish the first element of liability for aiding and abetting the scheme liability provisions: the existence of a primary violation.  The Fifth and Eighth Claims should therefore be dismissed to the extent they allege secondary violations of those provisions.

**H.    The Fourth Claim Should Be Dismissed Because It Is Barred Under** *Janus.*

As stated, Rule 10b-5(b) provides that it is unlawful for any person "[t]o make any untrue statement of a material fact" in connection with the purchase or sale of a security.  In *Janus Capital Group, Inc. v. First Derivative Traders*, the U.S. Supreme Court addressed claims under Section 10(b) and Rule 10b-5(b) based on misstatements in prospectus materials issued by Janus Investment Fund. The plaintiffs alleged that Janus Capital Management, the fund's investment adviser and administrator, violated Rule 10b-5(b) because it had been significantly involved in the creation of the allegedly misleading statements.  The plaintiffs alleged that the adviser had a close relationship with the fund, exercised significant influence over the fund and its prospectus disclosures, and was understood by investors to be the "maker" of disclosures issued by the fund.  The Supreme Court held that the adviser did not "make" the allegedly false statements within the meaning of Rule 10b-5(b) and therefore could not be primarily liable.  In so doing, the Supreme Court stated, "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Group, Inc.*, 564 U.S. at 142.

This Court has held that *Janus's* requirement that a primary violator under Rule 10b-5(b) be the "maker" of the fraudulent statement applies to claims under Section 17(a)(2) as well.  *See SEC v. Perry*, No. CV-11-1309 R, 2012 WL 1959566, at *8 (C.D. Cal. May 31, 2012) ("[t]his requirement applies to claims under both Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5

18

promulgated thereunder, and Section 17(a) of the Securities Act of 1933") (*citing SEC v. Global Express Capital Real Estate Inv. Fund, I, LLC*, 289 F. App'x 183, 186 (9th Cir. 2008) and *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 855–56 (9th Cir. 2001)).  Other courts are in accord.  *See, e.g., Kelly*, 817 F. Supp. 2d at 345 ("[t]o succeed on a misstatement claim under either Rule 10b–5(b) or Section 17(a)(2), the SEC must prove that the defendant *made* materially false statements or omissions") (emphasis in original).

Like its Rule 10b-5 claim, the SEC's Section 17(a)(2) claim is based solely on allegations that SEC filings made by the Companies failed to disclose Husain as a control person or promoter and contained other misstatements and omissions. And there is no dispute that the statements at issue were made by the Companies, and not by Mr. Jaclin or his law firm.  *See, e.g.,* FAC ¶¶ 74, 93, 117, 122.  Under these circumstances, *Janus* and its progeny, including pronouncements by this very Court, preclude liability under Rule 17(a)(2).

## I.   The Ninth Claim Should Be Dismissed Because the SEC Fails to Adequately Plead Materiality.

Exchange Act Section 15(d) requires issuers with securities registered under the Securities Act to file the periodic reports required under Exchange Act Section 13.  *See* 15 U.S.C. § 78o(d); 15 U.S.C. § 78m.  Rules 15d-1 and 15d-13 require issuers to file annual and quarterly reports, respectively, and Rule 12b-20 requires issuers to include in annual and quarterly reports material information as may be necessary to make the required statements, in light of the circumstances in which they were made, not misleading.  *See* 17 C.F.R. §§ 240.15d-1, 240.15d-13, and 240.12b-20; FAC ¶ 215.  Courts interpreting the same or analogous Rules under Exchange Act Section 13 (Rules 12b-20, 13a-1 and 13a-13) have made it clear that, while no showing of scienter is required to establish violations of those Rules, a showing of materiality is required.  *See, e.g., SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1165-67 (D.C. Cir. 1978); *SEC v. Falstaff Brewing Corp.*, 629 F.2d 62, 72

(D.C. Cir. 1980).  Here, as set forth above, the SEC has failed to allege *any facts whatsoever* supporting its claim that any allegedly false or misleading statements in SEC filings were material.  For that reason, the SEC's Ninth Claim should be dismissed.

**J.     The First Claim Should Be Dismissed Because Registration Statements Were in Effect and Mr. Jaclin Cannot Be Liable as a "Participant."**

Securities Act Section 5 prohibits (1) the offering of a security for sale unless a registration statement has been filed (Section 5(c)) and (2) the selling of a security unless a registration statement is "in effect." (Section 5(a)).  *See* 15 U.S.C. § 77e.  These prohibitions are subject to numerous exemptions, including exemptions for "transactions by an issuer not involving any public offering" – otherwise known as the "private offering" exemption.  *See* Securities Act Section 4(2), 15 U.S.C. § 77d(a)(2).

In its First Claim, the SEC contends that Mr. Jaclin committed direct violations of Sections 5(a) and (c) in connection with the offers or sales of stock of seven of the Companies.  The SEC does not allege that Mr. Jaclin offered or sold stock.  *See* FAC ¶¶ 174-176 (stating that the offers and sales upon which the SEC relies were offers and sales of stock by Husain to the Shell Company Purchasers and by the Shell Company Purchasers to the public).  Rather, the SEC relies on a "participant liability" theory for its Section 5 claim against Mr. Jaclin.  *See* FAC ¶ 178.

The SEC's Section 5 claim against Mr. Jaclin fails with respect to any offers or sales by Husain or by the Shell Company Purchasers, for two reasons.  First, for any offers or sales by Husain, registration statements were, contrary to the SEC's contention, in effect for each of the seven Companies for which Section 5 violations are alleged.  *See* FAC ¶¶ 127, 175 (identifying the seven Companies for which Section 5 violations are alleged); ¶¶ 20-26 (stating that registration statements were effective for those seven Companies).  The SEC claims that these

registration statements contained inaccurate information and therefore didn't count. This argument is exceptionally novel, particularly when asserted against an issuer's outside counsel and not the issuer itself, and appears to conflate liability under Section 5 with liability under Sections 11 and Section 17 of the Securities Act. Indeed, courts have rejected this very claim. *See, e.g., SEC v. Monarch Funding Corp.*, 1996 WL 348209, at *7 n.8 (S.D.N.Y. June 24, 1996) (The SEC "has cited no legal support for this statutory interpretation [of Section 5], and the Court's independent research has found no caselaw that would sustain [the SEC's] reading of the language of Section 5(a)(c)"). Moreover, Section 8 of the Securities Act provides a specific remedy to the Commission for purported misstatements in a registration statement — i.e., issuance of a stop order — but does not provide a claim against either the issuer or its outside attorneys.

Further, even if registration statements were not in effect – which they were – any such transactions were exempt under various provisions of the federal securities laws, including Securities Act Section 4(2). For example, for each Company, any such offers or sales were by Husain to a single purchaser – the Shell Company Purchaser. *See, e.g.,* FAC ¶¶ 96-97, 127-129, 174. Such private, one-to-one transactions cannot plausibly be construed as transactions involving a "public offering."

Second, any offers or sales by the Shell Company Purchasers were far too attenuated from any actions by Mr. Jaclin for "participant liability" to attach. For "participant liability" to attach, a person must be both a "necessary participant" and "substantial factor" in the sales transaction. *SEC v. Murphy*, 626 F.2d 633, 650 (9th Cir. 1980). The necessary participant test "is equivalent to the first prong of [a] proximate cause analysis," asking "whether, but for the defendant's participation, the sale transaction would not have taken place." *Id.* at 651.

The substantial factor test, however, requires more than a finding of "but for" causation:

1
2
3
4
5
6
7
8
9

> "Prior to the issuance of a security, numerous persons perform mechanical acts without which there could be no sale.  For example, a printer may prepare key documents or a bank may advance cash to a customer upon the customer's presentation of an instrument and then pass the instrument to another person.  Both would satisfy a "but for" causation test, but these acts nonetheless do not render the defendants sellers … Before a person's acts can be considered the proximate cause of a sale, his acts must also be a substantial factor in bringing about the transaction."

10  *Id.* at 650.

11      Here, any offers or sales occurring after each Company's reverse merger

12  were too remote in time and otherwise far too attenuated from any legal work that

13  Mr. Jaclin or his firm may have done to establish participant liability.  The SEC

14  does not allege that Mr. Jaclin sold stock or had any role in effecting sales

15  transactions for others.  Further, the post-merger sales typically occurred many

16  months after the registration statement and other documents at issue were filed (*see*

17  FAC App'x's 1-4) and after the Company had a new business, new shareholders,

18  and new officers and directors and had disclosed these changes in a "Super 8-K" or

19  other filing.  *See* FAC ¶ 111.  Under these circumstances, Mr. Jaclin cannot

20  plausibly be deemed a "substantial factor" in any post-merger offers or sales.

21  **K.      The Second Claim Should Be Dismissed Because the SEC Does Not**

22  **         Plead Facts Sufficient to Show "Substantial Assistance."**

23      In its Second Claim, the SEC alleges that Mr. Jaclin aided and abetted

24  Section 5 violations by Husain and the Shell Company Purchasers.  As noted, to

25  establish aiding and abetting liability under the federal securities laws, the SEC

26  must prove "substantial assistance" by the alleged aider and abettor.  *Apuzzo*, 689

27  F.3d at 211.  For the same reasons that Mr. Jaclin cannot be deemed to have been a

28  "substantial factor" in any unregistered, non-exempt post-merger offers or sales

(discussed above), Mr. Jaclin cannot be deemed to have offered "substantial assistance" in achieving any primary violation of Section 5.

**L.      Any Claims for Penalties and Disgorgement Should Be Dismissed as Time Barred to the Extent They Rely on Conduct Occurring Before March 1, 2011.**

28 U.S.C. § 2462 states that "an action ... for the enforcement of any civil fine, penalty, or forfeiture ... shall not be entertained unless commenced within five years from the date when the claim first accrued."  Section 2462 bars any SEC action for penalties brought more than five years after the allegedly fraudulent conduct occurred.  *Gabelli v. SEC*, 133 S. Ct. 1216, 1224 (2013).  Accordingly, any claim for penalties based on conduct occurring on or before March 1, 2011 is time-barred and should be dismissed.[2]

Similarly, Section 2462 bars any SEC action for disgorgement brought more than five years after the allegedly fraudulent conduct occurred.  *SEC v. Graham*, 823 F.3d 1357, 1363-64 (11th Cir. 2016).  In *Graham*, the Eleventh Circuit ruled that "for the purposes of § 2462 forfeiture and disgorgement are effectively synonyms; § 2462's statute of limitations applies to disgorgement….  We find no meaningful difference in the definitions of disgorgement and forfeiture."  *Id.* at 1363.  On that basis, the *Graham* court held that "the SEC is time-barred from proceeding with its claims for declaratory relief and disgorgement because, under the plain meaning of 28 U.S.C. § 2462, these remedies are a penalty and a forfeiture, respectively."  *Id.* at 1364.  Based on that reasoning, any claim for

---

[2] The SEC filed this action on May 12, 2016, but Mr. Jaclin and the SEC entered into a tolling agreement that tolled the running of any applicable statutes of limitation from March 1, 2016 through May 12, 2016.

disgorgement based on conduct occurring on or before March 1, 2016 is time-barred and should be dismissed.[3]

## IV.    CONCLUSION

Based on the foregoing, Mr. Jaclin respectfully requests that the Court grant his Motion to Dismiss without leave to amend.  Specifically, Mr. Jaclin requests that the Court:

1.    Dismiss the SEC's First, Second, Third, Fourth, Fifth, Sixth, Eighth, and Ninth Claims for Relief; and

2.    Dismiss the SEC's claims for penalties and disgorgement to the extent those claims rely on conduct occurring before March 1, 2011.

Dated: December 23, 2016                    Respectfully Submitted,

                                            /s/Jeffrey R. Thomas
                                            Jeffrey R. Thomas
                                            THOMAS LAW LLC
                                            Attorney for Defendant Gregg E. Jaclin

---

[3] While the Ninth Circuit in *SEC v. Rind*, 991 F.2d 1486 (9th Cir. 1993) concluded that the SEC was not bound by a statute of limitations, that court did not consider the applicability of Section 2462.

**PROOF OF SERVICE**

I hereby certify that, on December 23, 2016, I electronically filed the foregoing **DEFENDANT GREGG E. JACLIN'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address(es):

Amy J. Longo
LongoA@sec.gov

Roberto A. Tercero
TerceroR@sec.gov

George B. Newhouse, Jr.
george.newhouse@dentons.com

Kelly R. Graf
kelly.graf@dentons.com

25