O

# United States District Court
# Central District of California

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

IMRAN HUSAIN; GREGG EVAN JACLIN,

Defendants.

Case No. 2:16-cv-03250-ODW (Ex)

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [97]; AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [105]**

## I.   INTRODUCTION

Plaintiff Securities and Exchange Commission ("SEC") initiated this action against Defendants Imran Husain and Gregg Jaclin for perpetrating "a shell factory scheme" in violation of federal securities laws.[1]  (*See* FAC ¶ 7, ECF No. 33.)  Pending before the Court are the SEC's Motion for Summary Judgment on all claims, and Husain's Cross-Motion for Partial Summary Judgment on claims three through eight. (SEC's Mot. for Summ. J. ("SEC MSJ"), ECF No. 97; Husain's Opp. & Mot. for Partial Summ. J. ("Husain MPSJ"), ECF No. 105.)  The matters are fully briefed.  (*See* SEC Reply ISO MSJ, ECF No. 111; Husain Reply ISO MPSJ, ECF No. 112.)  For the

---

[1] On August 1, 2019, the Court entered judgment as to Jaclin pursuant to the parties' stipulation. (Stipulation for J., ECF No. 78; J., ECF No. 79.)  Accordingly, Husain is the only remaining Defendant.

reasons discussed below, the Court **GRANTS IN PART AND DENIES IN PART** the SEC's Motion for Summary Judgment and **DENIES** Husain's Cross-Motion for Partial Summary Judgment.[2]

## II.   BACKGROUND

### A.   Factual Background

From 2008 to 2012, Husain created and controlled nine shell companies (the "Shell Companies").[3]   (SEC's Statement of Uncontroverted Facts ("SECUF") 1–3, ECF No. 97-2.)  Husain's "shell factory scheme," which centered around penny stock issuers, followed a routine pattern.  (*See id.* 3.)

First, Husain created a "business plan" for a new company and then he engaged a friend, friend of a friend, relative, or acquaintance to be the company's CEO—but in name only.  (*Id.*)  In reality, Husain controlled the company and the CEO's activities.  (*Id.*)  The CEO was merely Husain's "puppet," as Husain retained full control of the Shell Companies by using nominee shareholders.  (*Id.* 3, 19–20.)

Second, Husain assisted in organizing sham private placement offerings of the Shell Companies' shares.  (*Id.* 19–20.)  Husain paid people to recruit shareholders for the Shell Companies and he knew that these "Straw Shareholders" were not using their own money to purchase the shares of the Shell Companies.  (*Id.* 20, 23.)  Husain even provided some of the Straw Shareholders cash to buy the stocks.  (*Id.* 21.)  Husain also exercised control over the nominee shareholder representatives who approved the eventual mergers on behalf of the Straw Shareholders.  (*Id.* 24–25.)

Third, Husain conducted initial public offerings of each of the Shell Companies' stock so that the shares could trade publicly.  (*Id.* 26–35, 41–42.)  He

---

[2] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[3] Husain created and controlled the following Shell Companies: (1) New Image Concepts, Inc. ("New Image"); (2) PR Complete Holdings, Inc. ("PR Complete"); (3) Ciglarette Inc. ("Ciglarette"); (4) Rapid Holdings, Inc. ("Rapid Holdings"); (5) Resume in Minutes, Inc. ("Resume in Minutes"); (6) Movie Trailer Galaxy ("Movie Trailer"); (7) Health Directory, Inc. ("Health Directory"); (8) Comp. Services, Inc. ("Comp. Services"); and (9) Counseling International, Inc. ("Counseling International").

directed each Shell Company to file a registration statement on Form S-1 with the SEC. (*Id.*)  Husain knew the Shell Companies' registration statements on Form S-1 and the amendments thereto were "misleading" because they "contained 'no disclosure of Husain's role as the controlling person' of the Shell Companies." (*Id.* 45.)  Instead, the Shell Companies' Forms S-1 listed the puppet CEOs as the sole officer, director, and employee of the Shell Companies. (*Id.* 46–47.)  Husain reviewed and approved the registration statements and was the Shell Companies' "main point of contact" with Jaclin and the companies' auditors. (*Id.* 36–40.)  Husain kept his name off the registration statements to avoid the suspicion and attention of the SEC. (*Id.* 51–53.)  Husain's responsibility for over fifty misleading registration statements is uncontested. (*See id.* 26.)

The Shell Companies provided information to market makers and transfer agents that omitted Husain's role as a control person, including Financial Industry Regulation Authority ("FINRA") Form 211 applications. (*Id.* 60, 61, 65.)  Following approval of the Form 211s, pre-merger trades occurred in the stock of three Shell Companies. (*Id.* 66–68.)

Between 2008 and 2012, eight Shell Companies filed periodic reports on Forms 10-K and 10-Q. (*Id.* 70–78.)  Husain "directed the preparation" of these SEC filings, reviewed and approved drafts, and coordinated with Jaclin and outside auditors before they were filed. (*Id.* 81.)  These SEC filings contained "material misrepresentations and omissions regarding, among other things, the [Shell Companies'] business purposes, Husain's identity and role as the control person and promoter of the companies, and the Straw Shareholders' and puppet CEOs' true nature, and in two instances, the existence of merger plans." (*Id.* 79.)  Throughout this process, Husain made sure his name was omitted from all SEC filings. (*Id.* 82.)

Husain was "aware that the shell companies that [he created] were valuable because they allowed the people who acquired them to completely control the shares and corporate actions of the companies that otherwise appeared to be legitimate public

companies." (*Id.* 126.)  Husain knew that the Shell Companies were sold to people who would "likely use the [Shell Company] to merge into private corporations that had some ongoing business." (*Id.* 127.)  "After the sale of each [S]hell [C]ompany, the [company's] puppet CEO resigned and new management was installed." (*Id.* 128.)

Husain "directed, reviewed, and approved" SEC filings for Health Directory and Movie Trailer, which falsely claimed that neither company had merger plans, even though "portions of the sales proceeds had already been received into escrow." (*Id.* 85–89, 91.)  In total, Husain oversaw the filing of over thirty-five materially false and misleading periodic reports with the SEC.  (*See id.* 70, 79.)  Husain sold seven of the Shell Companies through reverse mergers.  (*Id.* 92.)  Neither Husain's sales to the Shell Companies' purchasers, nor their subsequent sales to the public, were "validly registered" with the SEC.  (*Id.* 93, 113.)  The sales of Ciglarette, Resume in Minutes, Rapid Holdings, Health Directory, and Movie Trailer grossed $1,787,000.  (*Id.* 130.)

Husain and Jaclin made concerted efforts to conceal their scheme, including by communicating through false email accounts and hiring a computer consultant to destroy emails between Husain and Jaclin.  (*Id.* 136.)  In August 2012, the puppet CEO of PR Complete informed Husain that the SEC subpoenaed her in investigative proceedings regarding the Shell Company.  (*Id.* 141.)  Husain coached the puppet CEO on how to testify and instructed her to "to testify falsely by leaving [his] name out of it." (*Id.* 144.)  On October 14, 2014, Husain pleaded guilty to conspiracy to obstruct the proceedings of the SEC.  (*See id.* 141–49.)

**B.   Procedural Background**

On November 22, 2016, the SEC filed its First Amended Complaint against Husain for federal securities violations, asserting ten claims:

- Claims 1 and 2: unregistered offer and sale of securities under Section 5(a) and 5(c) of the Securities Act, and aiding and abetting violations of Sections 5(a) and 5(c);

- Claims 4 and 7: fraud in the offer or sale of securities in violation of Sections 17(a)(2) of the Securities Act and Rule 10b-5(b) of the Exchange Act;

- Claims 3 and 6: scheme to defraud in the offer or sale of securities in violation of Sections 17(a)(1) and 17(a)(3) of the Securities Act and Rules 10b-5(a) and (c) of the Exchange Act;

- Claims 5 and 8: aiding and abetting fraud in violation of Section 17(a) of the Securities Act and Rule 10b-5 of the Exchange Act; and

- Claims 9 and 10: aiding and abetting registration violations under Section 15(d) and Rules 12b-20, 15d-1, and 15d-13 of the Exchange Act, and control person violations pursuant to Section 20(a) of the Exchange Act.

(FAC ¶¶ 172–222.)  Husain filed a Motion to Dismiss the SEC's FAC, which Motion the Court denied.  (*See* Order Den. Defs.' Mots. to Dismiss, ECF No. 46.)  The Court stayed this case from May 2017 to August 2019, during the pendency of the related criminal matters.  (Order Granting Stay, ECF No. 58; Order Lifting Stay, ECF No. 82.)  Thereafter, the parties filed the present summary judgment motions.

### III.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  Moreover, though the Court may not weigh conflicting

evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).  Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).  The Court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that sets out "the material facts as to which the moving party contends there is no genuine dispute."  C.D. Cal. L.R. 56-1.  A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute.  C.D. Cal. L.R. 56-2.  "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion."  C.D. Cal. L.R. 56-3.

## IV.   DISCUSSION

First, the Court addresses the SEC's claims, which can be categorized three ways.  In Claims 1 and 2, the SEC alleges Husain violated Sections 5(a) and 5(c) by offering and selling unregistered securities.  In Claims 3 through 8, the SEC asserts a

theory of fraud—namely, that Husain's shell factory scheme involved acts of deception, misleading statements, and omissions in the sale of securities using means of interstate commerce.  In Claims 9 and 10, the SEC asserts "secondary claims" in the alternative to Husain's primary liability, alleging that he aided and abetted the Shell Companies' reporting violations and is liable as their control person.  Second, the Court addresses the SEC's requested remedies.  Husain moves for partial summary judgment on only Claims 3 through 8.

## A.   Offering and Selling Unregistered Securities (Claims 1 & 2)

The SEC moves for summary judgment on Claim 1, which alleges that Husain violated the Securities Act's registration requirements through unregistered offers and sales of securities.  (SEC MSJ 15–18.)  In the alternative, the SEC moves for summary judgment on Claim 2, which alleges that Husain aided and abetted said registration requirements.  (SEC MSJ 2 n.1.)  In his opposition, Husain states that he "is prepared to concede liability under Sections 5(a) and (c) . . . in connection with his failure to make disclosures to the SEC."  (Husain MPSJ 3.)

Sections 5(a) and (c) of the Securities Act prohibit the unregistered offer or sale of securities in interstate commerce or mail unless an exemption from registration applies.  *See* 15 U.S.C. § 77e(a), (c); *SEC v. Phan*, 500 F.3d 895, 902 (9th Cir. 2007). Husain concedes liability with respect to violating Sections 5(a) and (c), and thus, does not put forth any argument or evidence contesting his liability with respect to the registration violations.  (*See* Husain MPSJ 3, 15 (proposing judgment by consent on these claims).)  As there is no genuine dispute concerning Husain's primary violations of Sections 5(a) and (c), the SEC is entitled to summary judgment on Claim 1 against Husain for offering and selling unregistered securities.  Because the Court finds Husain liable for primary violations of these provisions, the SEC's claim for aiding and abetting violations of Sections 5(a) and (c) (Claim 2) is denied.

**B.     Fraud Violations (Claims 3–8)**

Next, the SEC moves for summary judgment on its claims that Husain violated various antifraud provisions of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 by operating the alleged shell factory scheme. (SEC MSJ 8–15.)    The SEC's fraud claims can be subcategorized three ways: (1) material misstatements and omissions (Claims 4 and 7), (2) scheme to defraud (Claims 3 and 6), and (3) aiding and abetting fraud (Claims 5 and 8).

Husain opposes the SEC's motion and cross-moves for partial summary judgment on Claims 3 through 8.  (Husain MPSJ 1.)

*1.     Claims 4 & 7: Material Misstatements and Omissions*

In its fourth and seventh claims, the SEC alleges that Husain profited from making material misstatements and omissions in the offer or sale of securities by means of interstate commerce.  (FAC ¶¶ 191–94, 204–07.)  Specifically, the SEC contends that the Shell Companies' registration statements—Form S-1, periodic reports on Forms 10-K and 10-Q, and FINRA Forms 211—all contained material misstatements depicting the puppet CEOs as the entities controlling the Shell Companies, while concealing Husain's ownership and control.  (SEC MSJ 10.) Additionally, two SEC filings, for Health Directory and Movie Trailer, falsely stated that neither company had plans to merge.  (*Id.*)  Husain, on the other hand, argues that any material misrepresentations or omissions were made only to the SEC, and as such, he cannot be held liable for securities fraud violations.  (Husain MPSJ 14–15.)

The antifraud provisions of the Securities Act (Section 17(a)(2)), and the Exchange Act (Section 10(b) and Rule 10b-5(b)), "forbid making a material misstatement or omission in connection with the offer or sale of a security by means of interstate commerce."  *SEC v. Hui Feng*, 935 F.3d 721, 734 (9th Cir. 2019) (internal quotation marks omitted).  Section 17(a)(2) makes it unlawful for any person in the offer or sale of any securities "to obtain money or property by means of any untrue statement of a material fact or any omission."    15 U.S.C.  § 77q(a)(2).

Section 17(a)(2) and Rule 10b-5(b) are nearly identical, except the statutes differ with respect to the state of mind requirements. *Hui Feng*, 935 F.3d at 734; *see Aaron v. SEC*, 446 U.S. 680, 695–97 (1980) (explaining that Section 10(b) and Rule 10b-5(b) violations require scienter, while Section 17(a)(2) requires only negligence).

Husain contest only the materiality of the misstatements and omissions and whether they were made "in connection with" and "in the offer or sale" of a security. (*See generally* Husain MPSJ.)  The first issue is whether Husain's ownership and control of the Shell Companies was *material*.  A fact is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  *Phan*, 500 F.3d at 908 (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988)).

As this Court has previously expressed, there is little doubt that a reasonable investor would have wanted to know the identity of the Shell Companies' true leader. (*See* Order Den. Defs.' Mots. to Dismiss 14); *see also SEC v. Fehn*, 97 F.3d 1276, 1290 (9th Cir. 1996) (finding that the existence of a control person is a material fact). Moreover, at this juncture, there can be no serious dispute that the omission of Husain's role as promoter and control person in the Shell Companies' annual and quarterly reports was material because he has admitted this fact in his Amended Answer.  (*Compare* FAC ¶ 216 ("The [S]hell [C]ompanies . . . filed annual and quarterly reports containing material misrepresentations and omissions regarding . . . Husain's identity and role as the control person and promoter of the companies."), *with* Husain's Am. Answer ¶ 216, ECF No. 92 ("Defendant admits the allegations in paragraph No. 216 [of the FAC].").)  Under federal law "admissions in the pleadings are generally binding on the parties and the Court."  *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).  Therefore, the Court finds that Husain's failure to disclose his role as control person and promoter of the Shell Companies was material.  *See Phan*, 500 F.3d at 908.

The second issue is whether the material misstatements and omissions were made "in the offer or sale of" a security, (*see* Section 17(a)), and "in connection with the purchase or sale of a security," (*see* Rule 10b-5). Section 17(a) is interpreted broadly; the Supreme Court has explained that the terms "in," "offer," and "sale," as used in Section 17(a), "are expansive enough to cover the entire selling process." *United States v. Naftalin*, 441 U.S. 768, 772–73 (1979) ("The statutory language does not require that the victim of the fraud be an investor—only that the fraud occur 'in' an offer or sale."); *see also id.* ("This language does not require that the fraud occur in any particular phase of the selling transaction."). Similarly, under Rule 10b-5, "the 'in connection with' requirement is met if the fraud alleged 'somehow touches upon' or has 'some nexus' with 'any securities transaction.'" *SEC v. Rana*, 8 F.3d 1358, 1362 (9th Cir. 1993) (quoting *SEC v. Clark*, 915 F.2d 439, 499 (9th Cir. 1990)). Thus, courts have found "[w]here the fraud alleged involves public dissemination in a document such as a[n] . . . annual report . . . or other such document on which an investor would presumably rely, the 'in connection with' requirement is generally met by proof of means of dissemination . . . ." *Id.*

Here, the very purpose of Husain's "shell factory scheme" was to create fake public companies whose stock could be traded, and the undisputed evidence demonstrates that his deceptive conduct accompanied the offers and sales of securities throughout the Shell Companies' existence in at least three ways. First, the undisputed evidence demonstrates that Husain made material misstatements and omissions in the offer of the Shell Companies' securities to the public in the Forms S-1 by failing to disclose his role as the companies' promoter and control person. (*See* SECUF 60, 61, 65.)

Second, Husain made material misstatements to market makers, transfer agents, and FINRA to enable public trading of the Shell Companies' stock. (*See id.*); *see, e.g.*, *SEC v. C. Jones & Co.*, 312 F. Supp. 2d 1375, 1381 (D. Colo. 2004) (false statements "enabling a stock to be publicly traded are 'reasonably calculated to

influence the investing public' and hence made 'in connection with' the purchase or sale of a security." (citation omitted)); *see also SEC v. Zouvas*, No. 3:16-cv-0998-CAB (DHBx), 2016 WL 6834028, at *8 (S.D. Cal. Nov. 21, 2016) ("[T]he alleged false information that [the defendant] gave to FINRA, the organization relied on by investors to ensure that the information they receive is truthful and complete," enabled "the stock to be publicly traded and [was], therefore, sufficiently connected to subsequent securities transactions.").

Third, Husain's material misstatements occurred during pre-merger and post-merger trades, and sales to the purchasers of the Shell Companies. (*See, e.g.*, SECUF 66–68.) For example, Movie Trailer and Health Directory's Form 10-K and amended Forms S-1 falsely claimed that neither company had merger plans, even though the purchasers already paid partial consideration for the Shell Companies. (*See id.* 85–89, 91.) Thus, based on the undisputed evidence the Court finds that Husain's material misstatements and omissions occurred "in the offer or sale of" and "in connection with the purchase or sale" of securities.

Nevertheless, Husain insists that the SEC's fraud claims fail because "there were no misstatements or omissions to any [S]traw [S]hareholder or investor," because they were involved in the scheme, and thus there was no violation of the antifraud statutes. (Husain MPSJ 14–15.) However, as this Court has previously stated, the antifraud provisions are meant to be broad and flexible so as to root out fraud *wherever it exists and in whatever form it takes*. (*See* Order Den. Defs.' Mots. to Dismiss 19–20 (citing *United States v. Charnay*, 537 F.2d 341, 349 (9th Cir. 1976)).) Indeed, Rule 10b-5 is "not intended as a specification of particular acts or practices that constitute manipulative or deceptive devices or contrivances, but [is] instead designed to encompass the infinite variety of devices that are alien to the climate of fair dealing." *Charnay*, 537 F.2d at 349 (internal quotation marks omitted). Similarly, investor protection is not the sole purpose of the Securities Act and Section 17(a) thereunder. *Naftalin*, 441 U.S. at 769. "While prevention of fraud against

investors was a key part of the purpose of the Act, so was the effort 'to achieve a high standard of business ethics . . . *in every facet of the securities industry,*' . . . ."  *Id.* (quoting *SEC v. Cap. Gains Bureau*, 375 U.S. 180, 186–87 (1963)).

Here, Husain intentionally engaged in fraudulent, deceitful, and criminal actions to enable the public trading of the Shell Companies' stock.  His actions were clearly "alien to the climate of fair dealing" and antithetical to the Securities Act's goal to achieve a high standard of business ethics.  *See Charnay*, 537 F.2d at 349; *Naftalin*, 441 U.S. at 769.  In light of the foregoing authority and in furtherance of the stated purposes of the antifraud provisions, the Court rejects Husain's absurdly narrow view that there can be no violation of the antifraud statutes simply because the Shell Companies' investors and purchasers were privy to the scheme.  The adoption of such a view would undermine the public's faith in the public securities markets.

Therefore, based on the undisputed evidence, the SEC has demonstrated that Husain made material misstatements and omissions "in the offer or sale of" and "in connection with the purchase or sale of a security" in violation of Section 17(a) and Rule 10b-5.  Accordingly, the SEC is entitled to summary judgment as to Claims 4 and 7, and Husain's Motion for Partial Summary Judgment on Claims 4 and 7 is denied.

### 2.   *Claims 3 & 6: Scheme to Defraud*

In its third and sixth claims, the SEC alleges that Husain engaged in a scheme to defraud as the co-mastermind of the shell factory scheme.  (FAC ¶¶ 187–90, 201–03.)  The SEC contends Husain engaged in numerous deceptive actions to conceal the shell factory from the public market, regulators, and market makers by, among other things, using puppet CEOs and coaching a witness to lie under oath.  (*Id.*)  Husain argues that there was no "scheme to deceive or defraud sellers, purchasers, or other investors of securities within the traditional meaning of the [antifraud] statutes."  (Husain MPSJ 1.)

"The securities fraud provisions . . . prohibit any person, in the offer or sale of securities, 'to employ any device, scheme, or artifice to defraud' or 'to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.'" *Hui Feng*, 935 F.3d at 736 (quoting 15 U.S.C. § 77q(a)(1), (3)); *see also* 17 C.F.R. § 240.10b-5(a), (c). "The same elements required to establish a section 10(b) and Rule 10b-5 violation suffice to establish a violation under sections 17(a)(1)–(3)." *Zouvas*, 2016 WL 6834028, at *11. A scheme typically involves a "manipulative" or "deceptive" act. *Id.* at *5 (quoting *Cooper v. Pickett*, 137 F.3d 616, 624–25 (9th Cir. 1997)); *see also Scheme*, Black's Law Dictionary (11th ed. 2019) ("An artful plot or plan . . . to deceive others."). "The state of mind requirement varies among these provisions, but a showing of intentional or knowing conduct clears all thresholds." *Hui Feng*, 935 F.3d at 736.

Here, the undisputed evidence demonstrates that Husain's deceptive actions exude the very essence of an unlawful scheme. Commencing with his fake "business plans" for the Shell Companies, Husain essentially developed a "how-to" guide for the creation and operation of an illegal shell factory enterprise. The scheme involved, among other things, creating public "shell" companies, which had virtually no assets, operations, or legitimate business purposes, and then selling the companies to buyers who sought to trade the companies' stock publicly. (*See* SECUF 126–128.) Husain's deceitful actions are numerous, including: (1) secretly recruiting puppet CEOs and Straw Shareholders, (2) organizing sham private placements, (3) preparing and filing false documents with the SEC, and (4) conducting initial public offerings for the Shell Companies. (*See id.* 3, 19–20, 26–35, 41–42, 46–47, 70–78.) His deceitful actions were for the purpose of facilitating the sale of securities to the purchasers of the Shell Companies via reverse merger. (*Id.* 126–128.) And his deceptive actions were necessary to take the Shell Companies public and make their securities valuable to the purchasers. (*Id.*)

Husain's shell factory scheme is exactly the type of conduct the antifraud provisions were designed to prevent.  *See Naftalin*, 441 U.S. at 769 (explaining that the intention of the Securities Act was 'to achieve a high standard of business ethics . . . *in every facet of the securities industry*"); *see also A.T. Brod & Co. v. Perlow*, 375 F.2d 393 (2d Cir. 1967) ("Rule 10b-5 . . . was designed to protect both investors and the public interest." (internal quotation marks omitted)).  Husain's shell factory scheme clearly undermined the integrity of the "securities industry" as a whole and the "public interest."  *See Naftalin*, 441 U.S. at 769; *A.T. Brod*, 375 F.2d at 396. Based on the undisputed evidence, the SEC has demonstrated that Husain engaged in a scheme to defraud in violation of 17(a) and Rule 10b-5.

Accordingly, the SEC is entitled to summary judgment as to Claims 3 and 6, and Husain's Motion for Partial Summary Judgment as to these claims is denied.

### 3.    Claims 5 & 8: Aiding and Abetting Fraud

As an alternative to primary liability under the antifraud statutes, in its fifth and eighth claims the SEC alleges that Husain is liable for aiding and abetting the Shell Companies' and their purchasers' fraudulent actions.  (FAC ¶¶ 195–200, 208–13; SEC MSJ 18 n.12 (explaining that the Section 17(a) and 10b-5 aiding and abetting claims are asserted "as an alternative basis for Husain's direct, primary liability").)  However, the Court's determination that Husain is liable as a primary violator of the antifraud statutes moots these claims.  Therefore, both motions are denied as to these claims.

## C.    Secondary Violations (Claims 9 & 10)

In its ninth and tenth claims, the SEC alleges that, in the alternative to Husain's primary liability, he aided and abetting the Shell Companies' reporting violations and is liable as their control person.  As discussed in Parts A and B above, Husain is liable as a primary violator of the Securities Act and the Exchange Act.  Accordingly, the SEC's claims for secondary violations as an aider and abettor and a control person (Claims 9 and 10) are denied.

**D.      Requested Remedies**

The SEC requests that the Court order the following remedies: (1) a permanent injunction; (2) civil penalties; (3) an officer and director bar and penny stock bar; and (4) disgorgement.  (SEC MSJ 19–25.)   The Court addresses each requested form of relief in turn.

*1.      Permanent Injunction*

First, the SEC seeks an order permanently enjoining Husain from violating the securities laws.  (SEC MSJ 19–20.)   The SEC may seek a permanent injunction against a person who has violated securities laws pursuant to Section 20(b) of the Securities Act and Section 21(d) of the Exchange Act.   *See* 15 U.S.C. §§ 77t(b), 78u(d).   To obtain an injunction, the SEC must establish that there is "a reasonable likelihood of future violations of the securities laws."   *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980).   "In predicting the likelihood of future violations, a court must assess the totality of the circumstances surrounding the defendant and his violations."   *Id.*   A court must consider the following factors ("*Murphy* Factors"): (1) the degree of scienter involved, (2) the isolated or recurrent nature of the misconduct, (3) the defendant's recognition of the wrongful nature of the conduct, (4) the likelihood that, because of the defendant's occupation, future violations may occur, and (5) the sincerity of defendant's assurances (if any) against future violations. *See id.*

Here, the totality of the circumstances warrants injunctive relief.   Husain acted with a high degree of scienter, over several years, in a repeated pattern of wrongdoing. He went to great lengths to conceal his shell factory scheme from regulatory oversight.   Husain only stopped his scheme because he got caught, which gives rise to an inference of a reasonable expectation of future violations.   *See SEC v. Manor Nursing Ctrs.*, 458 F.2d 1082, 1100-01 (2d Cir. 1972) ("[T]he drawing of such an inference [is] particularly appropriate . . . where appellants did not attempt to cease or undo the effects of their unlawful activity until the institution of an investigation.");

*SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 698 (9th Cir. 1978) (same).   And although Husain argues that he has expressed regret for his illegal past conduct, "courts must be particularly skeptical about attaching any significance to contrition under protest."   *Koracorp Indus.*, 575 F.2d at 698; (*see* Decl. of Imran Husain ISO MPSJ ("Husain Decl.") ¶ 5, ECF No. 105-3 ("I have repeatedly expressed regret for my conduct here.").)

Importantly, Husain fails to recognize the wrongful nature of his conduct.   He has repeatedly failed to acknowledge that there were victims of his fraudulent scheme, and he refuses to take responsibility for the impact of his illegal conduct on the market's integrity.   (*See, e.g.*, Husain Decl. ¶ 4 ("[T]here were no 'victims' of any . . . misconduct in this case involving sales of certain [Shell Companies].").)

Husain's past dealings and his failure to recognize the wrongful nature of his conduct gives the Court every reason to be concerned about future violations. Accordingly, the Court **GRANTS** the SEC's request for a permanent injunction.

### 2.   Civil Penalties

Second, the SEC requests that the Court impose a second-tier civil penalty of $1,757,000,[4] which represents the gross amount of pecuniary gain from Husain's illegal activities.   (SEC MSJ 22–23 (citing 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(A)).) "Congress enacted civil penalty provisions to achieve the dual goals of punishment of the individual violator and deterrence of future violations."   *SEC v. Duncan*, No. CV 08-1323-VAP (OPx), 2009 WL 10670521, at *15 (C.D. Cal. July 6, 2009) (quoting *SEC v. Marker*, 427 F. Supp. 2d 583, 592 (M.D. Fla. 2006)).   "The deterrence of securities fraud through the imposition of monetary sanctions serves such important goals as encouraging investor confidence, increasing the efficiency of financial markets, and promoting the stability of the securities industry."   *Id.* (citing *SEC v. Palmisano*, 135 F.2d 860, 866 (2d Cir. 1998)).

---

[4] The SEC excludes from this calculation the amount that Jaclin was ordered to disgorge.   (SEC MSJ 21 n.15.)

Similar to permanent injunctions, civil penalties are imposed to deter the wrongdoer from similar conduct in the future, so courts frequently apply the *Murphy* Factors for permanent injunctions when assessing civil penalties.   *See Murphy*, 626 F.2d at 655; *see also SEC v. CMKM Diamonds, Inc.*, 635 F. Supp. 2d 1185, 1192 (D. Nev. 2009).   For the same reasons as above, the *Murphy* Factors favor civil penalties.

The Exchange Act and the Securities Act provide for three tiers of penalties, and the amount of any penalty "shall be determined by the court in light of the facts and circumstances."  15 U.S.C. §§ 78u(d)(3)(B), 77t(d)(2).  Second-tier civil penalties apply to violations that "involved fraud, deceit, manipulation or deliberate or reckless disregard of a regulatory requirement," and must not exceed the gross amount of the defendant's pecuniary gain.   15 U.S.C.  §§ 78u(d)(3)(B)(ii),  77t(d)(2)(B).   As previously discussed, Husain's conduct involved fraud and deceit, and his gross pecuniary gain of $1,757,000 is undisputed.

Accordingly, the Court **GRANTS** the SEC's request for civil penalties under tier two in the amount of $1,757,000.

### 3.   *Officer and Director Bar and Penny Stock Bar*

Third, the SEC seeks to permanently bar Husain from serving as an officer or director of a public company and from participating in offerings of penny stock. (*See* SEC MSJ 23–25.)

Under Section 21(d)(2) of the Exchange Act and Section 20(e) of the Securities Act, a district court may prohibit a person who has engaged in securities fraud from acting as an officer or director of a public company "if the person's conduct demonstrates unfitness to serve as an officer or director."   15 U.S.C. §§ 77t(e), 78u(d)(2).  Courts may also bar an individual from trading in "penny stock," an equity security with a price of less than $5.00, when it is shown that the person was participating in an offering of penny stock at the time of his alleged misconduct.  *See* 15 U.S.C. § 77t(g).

Courts consider the following factors in determining whether to order an officer and director bar or a penny stock bar: "(1) the 'egregiousness' of the underlying securities law violation; (2) the defendant's 'repeat offender' status; (3) the defendant's 'role' or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 1998) (quoting *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995)); *SEC v. Premier Holding Corp.*, No. SACV 18-00813 CJC (KESx), 2020 WL 8099514, at *10 (C.D. Cal. Nov. 30, 2020) ("The court considers essentially the same factors that govern the imposition of an officer or director bar when imposing a penny stock bar." (internal quotation marks omitted)).

As discussed above, the undisputed facts establish that Husain was the co-mastermind of the illegal shell company scheme, which centered around penny stock issuers. His scheme lasted several years, and it resulted in numerous illegitimate public Shell Companies. Additionally, Husain controlled the companies during the scheme, took criminal actions to hide the scheme from detection, and profited substantially from his actions.

Upon consideration of the undisputed evidence in this case and relevant authorities, the Court finds that Husain should be barred from acting as an officer or director of a public company and from participating in an offering of penny stock for a period of seven years. The Court finds that a seven-year bar, as opposed to the permanent ban the SEC seeks, is more in line with other courts in this circuit and appropriately reflects the severity of Husain's scienter, his material misstatements, his economic stake in the scheme, and his lack of remorse for the illegal conduct. *Cf. SEC v. F. Nat'l Invs. Ltd.*, No. ED CV14-02376 JAK (DTBx), 2016 WL 6875953, at *7 (C.D. Cal. Nov. 18, 2016) (imposing a ten-year bar on former CEO who knowingly carried out a scheme to defraud members of the public by, among other things, disseminating false press releases); *SEC v. Retail Pro, Inc.*, No. 08 CV 1620-

WQH-(RBBx), 2011 WL 13186014, at *6 (S.D. Cal. June 23, 2011) (imposing a seven-year bar on a former CFO who made repeated misrepresentations to the public and auditors); *SEC v. Forum Nat'l Invs. Ltd.*, *Premier Holding Corp.*, 2020 WL No. SACV 18-00813-CJC (KESx), 2020 WL 8099514, at *10 (C.D. Cal. Nov. 30, 2020) (imposing a five-year bar on corporation's former president, CEO, and CFO, based on his "multiple material misstatements made with a high degree of scienter, his lack of remorse for his mistakes, and the significant likelihood of future violations.").

Accordingly, the Court **GRANTS** the SEC's request to bar Husain from serving as an officer or director of a public company and from participating in an offering of penny stock for a period of seven years from the date of judgment in this case.

*4. Disgorgement*

Fourth and finally, the SEC seeks disgorgement in the amount of $1,757,000, which constitutes the undisputed gross proceeds from the sales of the Shell Companies and prejudgment interest. (SEC MSJ 20–22.) "The district court has broad equity powers to order the disgorgement of ill-gotten gains obtained through the violation of the securities laws." *First Pac. Bancorp*, 142 F.3d at 1191 (internal quotation marks omitted).

Shortly after the SEC filed its Motion for Summary Judgment, the United States Supreme Court in *Liu v. SEC*, 140 S. Ct. 1936 (2020), clarified to what extent the SEC may seek disgorgement through the court's power to award equitable relief to victims of securities fraud. Justice Sotomayor, writing for the majority, held that "a disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under § 78u(d)(5)."

Because of the timing of the Supreme Court's decision, the SEC argues that the Parties did not have the opportunity to conduct discovery or brief the issues presented by *Liu*. And it contends that the record is lacking with respect to what portion of the $1,757,000 constitutes Husain's net profits. (*See* SEC's Reply ISO MSJ ("The SEC did not address *Liu* in its motion, and as Husain admits, the record is not complete as

1   to the factual findings *Liu* requires.").  Husain agrees that the record is undeveloped
2   with respect to "net proceeds" as opposed to "gross proceeds."  (Husain MPSJ 18.)

3          Thus, the SEC requests that the Court reopen discovery under Federal Rule of
4   Civil Procedure ("Rule") 56(d) so that it can provide supplemental briefing on this
5   issue.  (SEC Reply ISO MSJ 14–15.)  Under Rule 56(d), the Court has discretion to
6   defer resolution of a motion for summary judgment and allow time for additional
7   discovery "[i]f a nonmovant shows by affidavit or declaration that, for specified
8   reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ.
9   P. 56(d).  "An extension is not justified merely because discovery is incomplete or
10  desired facts are unavailable."  *Khai v. Cnty. of Los Angeles*, No. CV 16-3124 PA
11  (JCx), 2016 WL 11520829, at *3 (C.D. Cal. Sept. 14, 2016).  "The burden is on the
12  party seeking additional discovery to proffer sufficient facts to show that the evidence
13  sought exists," and that it is material to summary judgment.  *Chance v. Pac-Tel.*
14  *Teletrac, Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).

15         The Court finds the SEC's request to reopen discovery is deficient, and at this
16  stage in the litigation unnecessary.  First, instead of filing an "affidavit or declaration"
17  in support of the request, the SEC makes its Rule 56(d) request its Reply brief.
18  Therefore, the SEC "necessarily has not done the minimum required of [it] to . . .
19  delay summary judgment."  *See Wilcox v. City of Los Angeles*, No. CV 19-622-GW
20  (FFMx), 2020 WL 8096332, at *2 (C.D. Cal. Oct. 2, 2020).

21         Second, the Court finds that evidence concerning Husain's net profits are not
22  "essential" or necessary for the Court to rule on the Parties' Motions.  Moreover, the
23  Court finds that its imposition of a permanent injunction, seven-year officer and
24  director and penny stock bar, and $1,757,000 civil penalty are sufficient punishment
25  and deterrence to address Husain's violations of the securities laws.  Therefore, in the
26  exercise of its broad discretion, the Court **DENIES** the SEC's request for
27  disgorgement.

28

## V.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Husain's Motion for Partial Summary Judgment.  (ECF No. 105.)  The Court **GRANTS IN PART AND DENIES IN PART** the SEC's Motion for Summary Judgment (ECF No. 97) as follows:

- The SEC's Motion for Summary Judgment is **GRANTED** as to Claims 1, 3, 4, 6, and 7;
- The SEC's MSJ is **DENIED** as to Claims 2, 5, and 8 through 10;
- The Court **GRANTS** the SEC's request for an order permanently enjoining Husain from violating the securities laws;
- The Court **GRANTS** the SEC's request for civil penalties in the amount of $1,757,000;
- The Court **GRANTS** the SEC's request to bar Husain from serving as an officer or director of a public company and from participating in an offering of penny stock for a period of seven years from the date of judgment in this case; and
- The Court **DENIES** the SEC's request for disgorgement.

The SEC shall submit a Proposed Judgment no later than seven days after the date of this order.


**IT IS SO ORDERED.**


March 24, 2021

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**